ESTHER FREEDMAN *vs.* WOLF HURWITZ.

IRENE KLEENFELD, P. P. A., *vs.* WOLF HURWITZ.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 7th, 1932—decided February 21st, 1933.

*J. Warren Upson,* with whom, on the brief, was *Lawrence L. Lewis,* for the appellant (defendant).

*Jacob Schwolsky,* with whom were *Maurice A. Gruskay* and *Samuel H. Ritt,* for the appellees (plaintiffs).

Maltbie, C. J.  The plaintiffs brought these actions to recover damages for injuries suffered in a collision between an automobile in which they were riding as

the guests of the defendant and another car, and from a denial of his motions to set the verdicts aside and from the judgments upon them the defendant has appealed. The jury might reasonably have found the following facts: The accident occurred about nine p. m. on September 1st, 1930, before it was very dark. The defendant had been on a trip from his home in Waterbury to Cape Cod, starting the morning of the day before the accident, driving about one hundred and sixty-five miles that day, getting no sleep that night and driving back the day of the accident, about two hundred and ninety-five miles. The plaintiffs joined him in Hartford, both being seated upon the rear seat of the car, with a daughter of the defendant. He was very tired when he left Hartford. Going up Southington Mountain the defendant's daughter complained of being tired. A conversation then took place between the defendant and his wife, as to the exact terms of which the witnesses differ, but it was to the effect that he was tired and was afraid he would go to sleep and that if he did she was to tickle him or pinch him. The automobile passed the top of the mountain and proceeded toward Waterbury at a rather fast speed. On a practically straight section of the highway it met another car traveling upon its own right side of the highway, with rather dim lights. When the defendant's car was opposite the other, it swerved suddenly to the left into the side of that other and the injuries to the plaintiffs resulted. The defendant could not tell how the accident came about, but upon the basis of these facts the jury might have reasonably inferred it was due to his falling asleep as he came opposite the other car. They could also reasonably have reached the conclusion that there was such a likelihood of the defendant falling asleep if he continued to drive the car, of which he was or should have

been aware, that he was guilty of reckless misconduct under the so-called "guest statute." General Statutes, § 1628; *Potz* v. *Williams,* 113 Conn. 278, 155 Atl. 211.

In each case the defendant filed a special plea, that the plaintiff knew the condition of the defendant and had assumed the risk of injury incident to traveling with him. He contends that the verdict should have been set aside because the jury could not reasonably reach any conclusion other than that the risk had been so assumed and also that the trial court erred in refusing to submit to the jury the issue raised by the special pleas. The principle of assumption of risk expressed in the maxim *volenti non fit injuria* has had its most frequent application in our jurisprudence in cases involving the common-law liability of a master for injury suffered by his servant in the course of his employment. The principle is, however, one of broad application. 1 Beven, Negligence (4th Ed.) p. 790; and for historical discussion see his article, 8 Jour. Soc. Comp. Leg. 185. We have held it applicable between a landlord and a tenant where the latter leases premises in an open, visible and dangerous structural condition. *Valin* v. *Jewell,* 88 Conn. 151, 156, 90 Atl. 36; *Brandt* v. *Rakauskas,* 112 Conn. 69, 73, 151 Atl. 315. Nor is the principle restricted to cases where there exists a contract relationship between the parties. *Worden* v. *Gore-Meenan Co.,* 83 Conn. 642, 647, 78 Atl. 422; 1 Pollock, Torts (13th Ed.) 170. Under certain circumstances, it may operate in the field of negligence. *Kebbe* v. *Connecticut Co.,* 85 Conn. 641, 645, 84 Atl. 329; *Marks* v. *Dorkin,* 105 Conn. 521, 136 Atl. 83; *Kalamian* v. *Kalamian,* 107 Conn. 86, 89, 139 Atl. 635; *Miner* v. *Connecticut River R. Co.,* 153 Mass. 398, 403, 26 N. E. 994. When applicable in negligence actions, the principle is distinct from that of contributory negligence; as we said in *French* v. *Mertz Co.,*

116 Conn. 18, 163 Atl. 457, the defendant may admit his own negligence and the plaintiff's lack of contributory negligence and still claim that he is not liable, upon this principle. See 1 Beven, Op. Cit., p. 788; 1 Pollock, Op. Cit., p. 170. Hence, the fact that contributory negligence is not a defense to an action based upon reckless misconduct under the "guest statute" does not in itself prevent the defense of the assumption of risk in a proper case.

The principle operates, however, in a rather strictly limited field. Because the essence of the doctrine is the assumption of the risk, the injured person must or ought reasonably to have perceived that it existed, and because it is the risk which is assumed the injured person must have appreciated it, or the situation must be such that he ought reasonably to have appreciated it and realized that unless he took steps to protect himself he would be liable to injury. *Baer* v. *Baird Machine Co.*, 84 Conn. 269, 273, 79 Atl. 673. Of its application in an action by a servant against his master, we have said: "A servant assumes the risk when he knows the defective condition of an instrument, appreciates the danger from its use, and voluntarily encounters the risk. . . . Knowledge, in this connection, means either actual or constructive knowledge." *Elie* v. *Cowles & Co.*, 82 Conn. 236, 239, 73 Atl. 258. Moreover, the incurring of the risk must be really voluntary. If the continued exposure of the injured party to the risk is due to his inability reasonably to escape after he becomes or should become aware of it and appreciates or should appreciate the danger, or if the continuance of his subjection of himself to it is the result of influences or circumstances which are the real inducement to his course of conduct, the doctrine does not apply. *Elie* v. *Cowles & Co.*, *supra*, 241. The doctrine "is based entirely upon

voluntary exposure to danger, and can only be applied in cases where the person may reasonably elect whether or not he shall expose himself to it. The exposure may be without physical coercion, yet the circumstances may be such as would render it unreasonable for a person to exercise his election not to proceed in that way." *Chicago, R. I. & P. Ry. Co.* v. *Lewis*, 103 Ark. 99, 104, 145 S. W. 898; *Gover* v. *Central Vermont Ry. Co.*, 96 Vt. 208, 118 Atl. 874.

One is entitled to assume that another will exercise proper care until he perceives or ought reasonably to perceive that that other is not doing so, and he does not assume the risk that another will by some sudden negligent act or omission subject him to danger. *Stout* v. *Lewis*, 11 La. App. 503, 123 So. 346. A pedestrian crossing a highway and injured by the negligent operation of an automobile upon it, or the driver of one car injured by collision with another, may be guilty of contributory negligence, but he does not assume the risk of the sudden negligent act or omission of the party who caused the collision. 1 Pollock, Op. Cit., p. 173. So the mere fact that there is a possibility known to the guest in an automobile that the driver may be guilty of a negligent act or omission may not be a sufficient basis upon which to hold that he has assumed the risk. *Marks* v. *Dorkin, supra,* p. 524. And the doctrine can only apply where the particular situation or condition producing the risk has continued for such a length of time that the party alleged to have assumed it can be found to have known it or been charged with knowledge of it, to have appreciated the risk to which he was subjected by it, either actually or because he ought reasonably to have done so, and to have had an opportunity to avoid it.

It remains to apply these principles to the case before us. The plaintiffs are a young girl about fifteen

years old at the time of the accident and a woman then about sixty. They were riding as guests of the defendant in the rear seat of his automobile. It is true that the jury could reasonably have found that each knew that the defendant was tired and sleepy and that he realized he might fall asleep while driving the car, yet thereafter, without remonstrance or effort to guard themselves from danger, they continued to ride in it for a few minutes, just how long the record does not disclose. As far as the denial of the motion to set the verdict aside is concerned, it must be remembered that the defense of assumption of risk is an affirmative one, with the burden of proof upon the defendant, and we cannot say that the jury were bound to find as matter of law that the plaintiffs appreciated the risk of the defendant falling asleep. But beyond that, considering the ages and sex of these plaintiffs, their position as guests of the defendant riding upon the rear seat of the car, the hour of the night and the place where they were, with the other surrounding circumstances, it does not appear that there was any course which it could reasonably be said they ought to have adopted to avoid such danger as there was in the situation. The jury could not reasonably have found that by continuing in the car they voluntarily chose to assume the risk within the true meaning of the doctrine. The trial court was correct in not submitting to the jury the issue raised by the special pleas. There is no error.

In this opinion the other judges concurred.