[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 11, 1996
In this case, plaintiff Pankaj K. Das has sued his former landlord(s), defendants Turkey Hill Association, Inc., Stephen Fish d/b/a Turkey Hill Apartments, Stephen Fish d/b/a Fish Enterprises and Stephen Fish d/b/a Stephen Fish Co., seeking to recover money damages for certain losses he claims to have suffered because of the defendants' unconsented-to entry into his East Granby apartment before the expiration of his one-year lease on or about August 21, 1993. The plaintiff claims that in the course of that unlawful entry, the defendants, through an agent, servant or employee, removed, damaged and/or destroyed various items of his personal property, including documents relating to his work, tax documents and the contents of the refrigerator. As a result of the defendants' actions, the plaintiff claims that he has suffered emotional distress, lost twenty years of research on the wire and cable industry, and lost employment and career opportunities.
The First Count of the plaintiff's six-count Complaint alleges a breach of his lease agreement with the defendants, and of the express and implied covenants contained therein.
The plaintiff's Second, Third and Fourth Counts sound, respectively, in negligence, reckless misconduct and conversion. His Fifth and Sixth Counts state claims for intentional and negligent infliction of emotional distress.
On September 20, 1995, the defendants filed their Answer and Special Defenses. As their Second Special Defense to the Third Count, alleging reckless misconduct, they pleaded as follows that the plaintiff had assumed the risk of suffering his complained-of losses and damages by his own course of conduct leading up to the alleged removal, damage and/or destruction of his personal property:
 If the plaintiff suffered any injury or damages as alleged in his complaint, then said injury or damages were proximately caused by the plaintiff's own conduct in that he knew or should have known that he placed his belongings in danger and assumed the risk by failing CT Page 1256 to remove his belongings from the apartment in a timely and reasonable manner.
The plaintiff now moves this Court to strike the Second Special Defense to the Third Count on the ground that assumption of the risk is not a legally viable defense to a claim of reckless misconduct.
 I
"A motion to strike challenges the legal sufficiency of a pleading." Murray v. Commissioner of Transportation,31 Conn. App. 752, 754 (1993) (quoting Mingachos v. CBS, Inc.,196 Conn. 91, 108 (1985)); see also Practice Book § 152. As such, it may be used to test either the threshold legal viability of a given claim or defense in the context in which it has been pleaded; Nowak v. Nowak, 1756 Conn. 112, 116 (1978); or the sufficiency of the challenged pleading's factual allegations to establish all the essential elements of a concededly viable claim or defense. Sheiman v. Lafayette Bank Trust Co., 4 Conn. App. 39,45-46 (1985). In ruling on a motion to strike, the Court may only consider the grounds advanced by the party who made the motion. Cyr v. Bloomfield, 153 Conn. 261, 263 (1965).
 II
The only ground upon which the plaintiff has moved to strike the defendants' Second Special Defense to the Third Count is that assumption of the risk is not a legally viable defense to reckless misconduct. Because the plaintiff has made no claim that the defendants' factual allegations are legally insufficient to support that defense, the Court will not address that question in deciding this Motion.
The trial courts of this State have been called upon with increasing frequency to decide the question here presented. Suggesting that our Supreme and Appellate Courts have yet to address the issue, these courts have issued a series of conflicting opinions in an effort to resolve it.
Some judges have ruled that assumption of the risk can never be a defense to reckless misconduct. Cheneski v. Barber,7 CONN. L. RPTR. 92 (February 7, 1992) (Fuller, J.); Zawadski v.Robbins, 7 CONN. L. RPTR. 92 (July 14, 1992) (Wagner, J.). In so ruling, these judges have noted that "the majority rule in other CT Page 1257 states is that assumption of the risk is not a valid defense to such actions[,] Cheneski, supra, 93 (citing 65A CJS 300, Negligence, See 174(4); 57A Am.Jur.2d 734, Negligence, Sec. 833), and that in Connecticut, where" the common-law defense of assumption of the risk operated as a complete bar to recovery, . . . recent legislative history on the subject of negligence would indicate a trend away from the application of such a harsh rule." Zawadski, supra.
Other judges, however, have disagreed. Fortier v. Hoban,1994 WL 668036 (November 17, 1994) (Sylvester, J.); Sego v.Debco, Inc., 12 CONN. L. RPTR. No. 13, 415 (October 24, 1994) (Skolnick, J.); Tarver v. DeVito, 7 CONN. L. RPTR. 631 (July 27, 1992) (Rush, J.); Hockman v. Kukai Caliente, Inc., 4 CSCR 412
(April 28, 1989) (Schaller, J.). These judges appear to have concluded that assumption of the risk is a valid defense to reckless misconduct because it is a variant of contributory recklessness, which itself is a recognized defense to a recklessness claim. See, e.g., Tarver, supra (expressly equating assumption of the risk with contributory recklessness, and on that basis denying plaintiff's motion to strike); and Sego,supra, 416 (quoting the legal definition of contributory recklessness, then concluding that the allegations of a challenged assumption-of-the-risk defense were sufficient to support that defense because they "might be held" to prove each essential element of contributory recklessness). For the following reasons this Court agrees with the results of the latter cases without relying upon their legal analysis.
The common premise of the above-cited cases is that our Supreme and Appellate Courts have not yet spoken on the issue here presented. I respectfully disagree.
In 1933, the Supreme Court decided the case of Freedman v.Hurwitz, 116 Conn. 283 (1933). There, the defendant driver of an automobile which collided with another automobile when he fell asleep at the wheel was successfully sued by two of his passengers for reckless misconduct under the guest statute. The plaintiff's' theory of liability, on which the jury returned their verdicts, was that the defendant engaged in reckless misconduct by driving his automobile when he knew he was very tired, had voiced concerns that he might fall asleep, and thus either knew or should have known that he was likely to fall asleep if he continued to drive. CT Page 1258
To this claim the defendant interposed a special plea of assumption of the risk. In support of the plea, he attempted to prove that the adult plaintiff knew of his overtired condition, having discussed it with him as he drove, and thus "had assumed the risk of injury incident to traveling with him." Id. 286.
On appeal, the defendant contended that the trial court committed error in two related respects. First, he claimed that his "verdict should have been set aside because the jury could not possibly reach any conclusion other than that the risk had been so assumed." Id. Second, he claimed that the trial court erred in "refusing to submit to the jury th[at] issue . . ." Id.
In addressing the defendant's claims of error, the Freedman
Court first asked itself the very question which this plaintiff now raises: whether assumption of the risk can ever be a legally viable defense to reckless misconduct. It answered, in the affirmative, follows:
 The principle of assumption of risk expressed in the maxim volenti non fit injuria has had its most frequent application in our jurisprudence in cases involving the common-law liability of a master for injury suffered by his servant in the course of his employment. The principle is, however, one of broad application. 1 Beven, Negligence (4th Ed.) p. 790, and for historical discussion see his article. 8 Jour. Soc. Comp. Leg. 185. We have held it applicable between a landlord and a tenant where the latter leases premises in an open, visible and dangerous structural condition. Valin v. Jewell, 88 Conn. 151, 156, 90 A. 36; Brandt v. Rakauskas, 112 Conn. 69, 73, 151 A. 315. Nor is the principle restricted to cases where there exists a contract relationship between the parties. Worden v. Gore-Meenan Co., 83 Conn. 642, 647, 78 A. 422; 1 Pollock, Torts (13th Ed.) 170. Under certain circumstances it may operate in the field of negligence; as we said in French v. Mertz Co., 116 Conn. 18, 163 A. 457, the defendant may admit his own negligence and the plaintiff's lack of contributory negligence and still claim that he is not liable, upon this principle. See CT Page 1259 1 Beven, Op. Cit., p. 788; 1 Pollock, Op. Cit., p. 170. Hence, the fact that contributory negligence is not a defense to an action based upon reckless misconduct under the "guest statute" does not in itself prevent the defense of the assumption of the risk in a proper case.
Freedman, supra, 286-87.
Having declared that "in a proper case," assumption of the risk can be a valid defense to reckless misconduct,[1] theFreedman Court went on to determine whether the case before it was such a case. To that end, it first identified and described the established elements of the defense. "The principle," declared Chief Justice Maltbie,
 operates . . . in a rather strictly limited field. Because the essence of the doctrine is the assumption of the risk the injured person must or ought reasonably to have perceived that it existed, and because it is the risk which is assumed the injured person must have appreciated it, or the situation must be such that he ought reasonably to have appreciated it and realized that unless he took steps to protect himself he would be liable to injury. Baer v. Baird Machine Co., 84 Conn. 269, 273, 79 A. 673. Of its application in an action by a servant against his master, we have said: "A servant assumes the risk when he knows the defective condition of an instrument, appreciates the danger from its uses and voluntarily encounters the risk . . . Knowledge in this connection means either actual or constructive knowledge." Elie v. Cowles Co., 82 Conn. 236, 239, 73 A. 258. Moreover, the incurring of the risk must be really voluntary. If the continued exposure of the injured party to the risk is due to his inability reasonably to escape after he becomes or should become aware of it and appreciates or should appreciate the danger or if the continuance of his subjection of himself to it is the result of influences or circumstances which are the real inducement to his course of conduct the doctrine does not apply. CT Page 1260 Elie v. Cowles Co., supra, 241. The doctrine is based entirely upon voluntary exposure to danger and can only be applied in cases where the person may reasonably elect whether or not to expose himself to it. The exposure may be without physical coercion, yet the circumstances may be such as would render it unreasonable for a person to exercise his election not to proceed in that way. Chicago, R.I. P. Ry. Co. v. Lewis, 103 Ark. 99, 104, 145 S.W. 898, Gover v. Central Vermont Ry. Co., 96 Vt. 208, 118 A. 874.
 One is entitled to assume that another will exercise proper care until he perceives or ought reasonably to perceive that the other is not doing so, and he does not assume the risk that another will by some sudden negligent act or omission subject him to danger. Stout v. Lewis, 11 La. App. 503, 123 So. 346. . . . So the mere fact that there is a possibility known to the guest in an automobile that the driver may be guilty of a negligent act or omission may not be a sufficient basis upon which to hold that he has assumed the risk. Marks v. Dorkin,
[105 Conn. 521], 524. And the doctrine can only apply where the particular situation or condition producing the risk has continued for such a length of time that the party alleged to have assumed it can be found to have known of or been charged with knowledge of it, to have appreciated the risk to which he was subjected by it either actually or because he ought reasonably to have done so and to have had an opportunity to avoid it.
Freedman v. Hurwitz, supra, 287-88.
Applying these principles to the case before it the Court affirmed the trial court's judgment, concluding: (1) that the verdict should not have been set aside, since the jury were not "bound to find as a matter of law that the plaintiffs appreciated the risk of the defendant falling asleep;" id., 289; and (2) that the trial court did not err by refusing to instruct the jury on the defense, since from CT Page 1261
 their position as guests of the defendant riding upon the rear seat of the car, the hour of the night and the place where they were, with the other surrounding circumstances, it does not appear that there was any course which it could reasonably be said they ought to have adopted to avoid such danger as there was in the situation. The jury could not reasonably have found that by continuing in the car they voluntarily chose to assume the risk within the true meaning of the doctrine.
Id.
By so carefully and thoughtfully considering the possible applicability of the assumption-of-the-risk doctrine to the facts of the case before it, the Freedman Court pointedly confirmed what it had earlier declared in its decision: that "in a proper case," the established common-law defense of assumption of the risk can be invoked and relied upon as a defense to reckless misconduct. It demonstrated, moreover, that when such a defense is asserted, the only proper inquiry is whether the facts upon which it is sought to be based establish the defense "within the true meaning of the doctrine." Id.
In light of the foregoing discussion, the plaintiffs' Motion to Strike must be denied under the authority of Freedom v.Hurwitz, supra. Said denial, however, is without prejudice to the defendant's right to later claim that the allegations of Defendants' Second Special Defense to the Third Count do not support or establish that defense.
SHELDON, J.